# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| BOBBY R. HEPSTALL, individually and as Administrator ad Litem of the Estate of Lucy Hepstall, <br><br> Plaintiffs, <br><br> vs. <br><br> HUMANA HEALTH PLAN, INC.; TOMMY THROWER; MIKE QUIGLEY <br><br> Defendants. | ) <br> ) <br> ) <br> ) Case No. 1:18-CV-00163-CG-MU <br> ) <br> ) **JURY TRIAL DEMANDED** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFF'S MOTION TO REMAND

Binding United States Supreme Court precedent requires that a private corporation demonstrate delegation of authority from the Federal Government or that it is performing a function that the Government must itself perform in order to establish federal officer removal jurisdiction. Here, Humana Health Plan, Inc. ("Humana") has not established either, or any of the other elements necessary for removal. Thus, this Court should remand this case to state court.

**I.      Introduction**

Plaintiff filed this action in the Circuit Court of Clarke County, Alabama against Humana and two of its agents, Tommie Thrower and Mike Quigley. Doc. 1-1. Humana removed this action asserting federal officer jurisdiction. Doc. 1. Humana provided this Court with no evidence to support its removal. It provided no evidence that the Federal Government has expressly delegated the function of providing Medicare to eligible citizens. It has alleged, but not established, that it contracted with the Government. Doc. 1, ¶¶ 14-15. Even if true, such a contract would not provide proof of delegation. Further Humana has not provided this Court

with any evidence that it provides a function which the Government itself must provide. As set forth below, the Government need not (and presumably cannot) provide Medicare replacement plans like the one sold to Plaintiff. The Government can, if it chooses, contract with a private company which can then sell healthcare plans to Medicare recipients, but it is by no means required to do so. Thus, a private company, like Humana, is not a "federal officer" for purposes of the federal removal statute. For these reasons, and those discussed below, Plaintiff requests that this Court remand this case to state court.

**II.     Argument**

In order to establish "federal officer" jurisdiction, a defendant bears the burden of establishing: (1) that is a federal officer or a person acting under that officer; (2) that it has a colorable federal defense; and (3) that the suit is for an act under color of office, which requires a causal nexus between the charged conduct and asserted official authority. Plaintiff does not dispute that Humana is a "person" under § 1442. However, Plaintiff disputes that Humana was "acting under" a federal officer, that Humana has a colorable federal defense, that the suit is for an act under color of federal office, and that any causal nexus exists between the charged conduct and asserted official authority.

Further, Plaintiff also disputes that this Court must interpret the federal officer removal statute broadly. Although liberal construction is favored in the case of an actual federal officer, such is not the case when a private person or entity seeks to establish federal officer jurisdiction. This Court has held:

> Notwithstanding its broad application, because the federal officer removal statute is predicated "on the protection of federal activity and an anachronistic mistrust of state courts' ability to protect and enforce federal interests and immunities from suit, private actors seeking to benefit from its provisions bear a special burden in establishing the official nature of their activities."

*Swanstrom v. Teledyne Cont'l Motors*, Inc., 531 F. Supp. 2d 1325, 1330 (S.D. Ala. 2008) (other internal quotation marks and citations omitted).

    A.    **Humana Is Not "Acting Under" a Federal Officer**

To the undersigned's knowledge, only one federal court of appeal has addressed the issue whether a private insurance company selling or administering Medicare Advantage plans "acts under" a federal officer. The United States Court of Appeals for the Sixth Circuit, the home circuit for Humana, and in a case in which Humana was the removing defendant, found that that Humana does not "act under" a federal officer in administering Medicare Advantage plans. In *Ohio State Chiropractic Association v. Humana Health Plan Inc.*, 647 F. App'x 619, 622-24 (6th Cir. 2016), the United States Court of Appeal for the Sixth Circuit held:

> Our analysis starts (and, in this case, ends) with the threshold question whether Humana could avail itself of § 1442(a) to remove the suit. The statute provides a federal forum to "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." Humana is not a federal agency or officer. Removal was nonetheless proper, Humana argues, because the federal government delegates authority to MAOs to administer Medicare benefits. Humana claims that its contract to "administer[ ] Part C of Medicare" amounts to a government function without which "providers would receive payment directly from the federal government." By Humana's reckoning, to carry out that function it is "contractually obligated to comply with applicable federal statutes, directives and guidance," which govern "all facets" of its relationship with Bosman. In particular, it points to the MA statute and attendant CMS regulations that address aspects of MAO payment to non-contract providers. *See* 42 U.S.C. §§ 1394w–22(a)(2)(A), (k)(1), 1395w–27(f); 42 C.F.R. §§ 422.100(b), 422.214(a).
>
> Section 1442 permits removal only if Humana was "acting under" an "agency" or "officer" of "the United States." § 1442(a)(1). Humana contends that "acting under" requires only that its "relationship to the plaintiff 'derived solely from [Humana's] official duties.' " *Magnin v. Teledyne Cont'l Motors,* 91 F.3d 1424, 1428 (11th Cir.1996) (quoting *Willingham v. Morgan,* 395 U.S. 402, 409, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969)). That interpretation moves the goalposts. First, the quoted language from *Willingham* referred to "a civil suit of" a particular "nature"—one involving "senior" federal "officials" whose alleged conduct arose from "official duties." 395 U.S. at 409, 89 S.Ct. 1813.

More fatal, *Willingham* preceded *Watson v. Philip Morris Cos.,* 551 U.S. 142, 127 S.Ct. 2301, 168 L.Ed.2d 42 (2007). In *Watson,* the Supreme Court held that a private person's "acting under" a federal agency "must involve an effort to *assist,* or to help *carry out,* the duties or tasks of the federal superior." 551 U.S. at 152, 127 S.Ct. 2301. Formal "delegation of legal authority" might authorize removal under § 1442, but regulation of an activity cannot, no matter how extensive or complex it may be. *Id.* at 156, 127 S.Ct. 2301. A dictum in *Watson* suggested that some private contractors can invoke the statute, perhaps only those whose relationship with the federal government "is an unusually close one involving detailed regulation, monitoring, or supervision." *Id.* at 153, 127 S.Ct. 2301.

Humana also relies heavily on the *Watson* Court's statement that § 1442 "must be 'liberally construed.' " *Id.* at 147, 127 S.Ct. 2301 (quoting *Colorado v. Symes,* 286 U.S. 510, 517, 52 S.Ct. 635, 76 L.Ed. 1253 (1932)). The narrower officer-removal statute under consideration in *Symes* protected only those "acting under or by authority of" federal officers who were themselves "acting by authority of any revenue law of the United States." Act of Aug. 23, 1916, ch. 399, § 33, 39 Stat. 532. A liberal construction, the *Symes* Court reasoned, served Congress's desire to maintain the supremacy of federal law by protecting federal officers "against peril of punishment for violation of state law." 286 U.S. at 517, 52 S.Ct. 635; *see also Tennessee v. Davis,* 100 U.S. 257, 258, 25 L.Ed. 648 (1879) (concern animating the passage of Act of July 13, 1866, ch. 184, 14 Stat. 171, was that "operations of the general government may at any time be arrested at the will of one of the States").

In fact, each of the broad interpretations that Humana emphasizes traces to earlier versions of § 1442 that granted the removal power only to individuals enforcing federal customs and revenue laws. *See Arizona v. Manypenny,* 451 U.S. 232, 241–42, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981); *Willingham,* 395 U.S. at 405–06, 89 S.Ct. 1813; *Bennett v. MIS Corp.,* 607 F.3d 1076, 1088 (6th Cir.2010) (quoting remark in *Isaacson v. Dow Chem. Co.,* 517 F.3d 129, 137 (2d Cir.2008), that *Maryland v. Soper (No. 1),* 270 U.S. 9, 46 S.Ct. 185, 70 L.Ed. 449 (1926), demonstrates that the "hurdle erected by th[e 'under color'] requirement is quite low"). To be sure, *Watson's* instruction is useful. But proper context demonstrates the limits of its usefulness in considering a private health-insurance contractor.

With the rules of interpretation clarified, we turn to Humana's argument. As *Watson* makes clear, a private firm does not "act under" a federal officer simply because its activities are directed, supervised, and monitored by an agency. Detailed regulation, monitoring, or supervision of a *contractor,* however, may signify a relationship "unusually close" enough to "establish the type of formal delegation" that falls within § 1442(a). *Watson,* 551 U.S. at 153, 156, 127 S.Ct. 2301. The question is where that line is drawn. For reasons that follow, we hold

4

that the relationship between CMS and MAOs is not so unusually close that Humana may wield the officer-removal statute.

Normally, when federal agencies delegate legal authority to private entities, they do so expressly. *Id.* at 157, 127 S.Ct. 2301. That's the case with Medicare Part B. For efficiency, the Secretary of the Department of Health and Human Services (HHS) is authorized to contract with private health insurers—"[M]edicare administrative contractors" in CMS parlance—to administer payment of Part B claims. *See* 42 U.S.C. § 1395u. Under this fee-for-service arrangement, the Secretary pays the cost of claims administration. In return, the insurers "act on behalf of CMS," 42 C.F.R. § 421.5(b), as "the Secretary's agents," *Schweiker v. McClure,* 456 U.S. 188, 190, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982). CMS even indemnifies the insurers with respect to those duties. 42 C.F.R. § 421.5(b).

CMS's relationship with MAOs works differently. Congress created Medicare Advantage in the hope that the private sector would make delivering Medicare benefits cheaper and more efficient. *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.,* 685 F.3d 353, 363 (3d Cir. 2012). CMS sets per-beneficiary rates, 42 C.F.R. § 422.306, and MAOs profit by providing care at a cost lower than the value of those government payments. Because larger insurance pools are less susceptible to adverse selection, *King v. Burwell,* –––U.S. ––––, 135 S. Ct. 2480, 2485–86, 192 L.Ed.2d 483 (2015), MAOs have an incentive to maximize enrollment. It therefore makes good policy sense that so long as they provide the same "benefits" available through "original [M]edicare," 42 U.S.C. § 1395w–22(a)(1)(A), MAOs can design MA plans as they see fit. For example, MAOs have free rein to decide: the network of providers with whom they contract, 42 C.F.R. § 422.4; the benefits to provide enrollees beyond traditional Medicare, *id.* § 422.102(b); the out-of-pocket costs that they charge enrollees, *id.* § 422.111(f)(5); and the care that enrollees can obtain from out-of-network providers, *ibid.* MAOs do not regularly update CMS on their enrollees' claims and benefits. *See id.* § 422.310. In fact, they are required to attempt to resolve benefits disputes before MA plan enrollees resort to administrative review. *Id.* § 422.562. In short, MAOs have an arms-length relationship with CMS.

Of course, MAOs are still subject to extensive regulatory requirements. But their autonomy to "utilize innovations [of] the private market" in MA plan design and implementation indicates that MAOs are not closely supervised or controlled by CMS. H.R.Rep. No. 105–217, at 585 (1997) (Conf. Rep.); *cf. Cabalce v. Thomas E. Blanchard & Assocs., Inc.,* 797 F.3d 720, 728 (9th Cir.2015). CMS recognizes as much: Part C has no analogue to 42 C.F.R. § 421.5(b) permitting MAOs to "act on [its] behalf." *Cf. Zanecki v. Health All. Plan of Detroit,* 577 Fed.Appx. 394, 397–98 (6th Cir. 2014) (CMS lacks authority to manage "detailed physical performance" or control "day-to-day operations" of MAOs).

5

A contractor may be more likely to act under a federal officer if it takes on a job that the government would otherwise have to do. The *Watson* Court credited (albeit tepidly) the Fifth Circuit's holding in *Winters v. Diamond Shamrock Chem. Co.,* 149 F.3d 387 (5th Cir.1998), that Dow Chemical fell within the ambit of § 1442(a) when it produced Agent Orange for the federal government. "[A]t least arguably," *Watson* posited, "Dow performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform." 551 U.S. at 154, 127 S.Ct. 2301. But do MAOs perform a job that the government would have to perform itself if it did not contract with private *624 firms? We think not. If no health insurer chose to contract with CMS as an MAO, it is doubtful that the government would get into the business of offering its own MA plans. It certainly doesn't *have* to. More likely, it would fall back on traditional fee-for-service Medicare—which it must provide regardless. *See* 42 U.S.C. §§ 426(a), 1395c. Contrast Humana's situation with that of contractors performing tasks that the government would otherwise have to use its own agents to complete. *E.g. Jacks v. Meridian Res. Co.,* 701 F.3d 1224, 1233 (8th Cir.2012) (providing health care to federal employees); *Ruppel v. CBS Corp.,* 701 F.3d 1176, 1181 (7th Cir.2012) (building naval warships); *Bennett,* 607 F.3d at 1087–88 (removing mold from air-traffic-control towers); *Lay v. Burley Stabilization Corp.,* 312 Fed.Appx. 752, 761 (6th Cir.2009) (Moore, J., concurring) (collecting assessments and remitting gains from loan-pool tobacco sales).

Humana also relies on the argument that its contract with CMS subjects it to particularly detailed regulation. But that alone does not bring a private firm within the scope of § 1442(a). *Watson,* 551 U.S. at 145, 127 S. Ct. 2301. Nor does CMS confer on MAOs "a power to make rules, as opposed to interpret and apply them as best it can." *Lu Junhong v. Boeing Co.,* 792 F.3d 805, 810 (7th Cir.2015). And as discussed above, we disagree that "all facets" of the MAO relationship with non-contract providers are dictated by CMS regulation. However regulated MAOs may be, they operate at a distance from CMS.

Several lower courts have reached the opposite conclusion. Most did not engage with the question whether the MAO relationship to the federal government is akin to a delegation. *See Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan, Inc.,* 76 F.Supp.3d 1388, 1391 (S.D.Fla.2014); *Rudek v. Presence Our Lady of Resurrection Med. Ctr.,* No. 13 C 06022, 2014 WL 5441845, at *1 & n. 1 (N.D.Ill. Oct. 27, 2014); *Einhorn v. CarePlus Health Plans, Inc.,* 43 F.Supp.3d 1268, 1270 (S.D.Fla.2014); *Mann v. Reeder,* No. 1:10–CV–00133, 2010 WL 5341934, at *2 (W.D.Ky. Dec. 21, 2010). Two have considered the question, but failed to also consider whether the relationship between CMS and an MAO is unusually close. *Beaumont Foot Specialists, Inc. v. United Healthcare of Tex., Inc.,* 2015 WL 9257026, at *4 (E.D. Tex. Dec. 14, 2015); *Woodruff v. Humana Pharmacy Inc.,* 65 F.Supp.3d 588, 590–91 (N.D. Ill. 2014). We are not convinced that the regulation, supervision, and control to which Humana is subject connote the sort of unusually close relationship necessary for a private contractor to "act under" a federal agency.

The Sixth Circuit's holding is consistent with district court decisions in the Eleventh Circuit. See, e.g., *Kennedy Health Options, Inc.*, 329 F.Supp. 2d 1314 (S.D. Fla. 2004) and *Sikes v. Careplus Health Plans, Inc.*, 2014 WL 4322322 (S.D. Fla. Sept. 2, 2014), *vacated on other grounds*, 2015 WL 1801272 (11th Cir. April 7, 2015). In *Sikes*, the district court concluded that "the mere fact that [the defendant] maintains a contract with CMS regulating how such services are to be provided is insufficient to conclude that [the defendant] was 'acting under the direction of an officer of the United States or its agencies.'" 2014 WL 4322322 *3. The district court went on to find that the defendant "offered no evidence that its decision to not authorize [the plaintiff's healthcare treatment] was 'directed' or 'controlled' by a federal agency." *Id*. It also found that the defendant pointed to "no federal regulations" that directed the defendant's decisions about healthcare authorization. *Id*. Similarly, in *Kennedy*, supra, the court held that the mere existence of federal regulations does not, in and of itself, confer federal agency jurisdiction. 329 F.Supp. 2d at 1318..

These statements of the law in *Kennedy* and *Sikes* are consistent with United States Supreme Court's most recent decision on federal officer jurisdiction. In *Watson v. Phillip Morris Companies, Inc.*, 551 U.S. 142, 156 (2007) the Court held that "degree of regulatory detail or supervision cannot by themselves transform" a company's actions into "acting under" a federal officer. Instead, that Court held that the key is whether Congress or a federal agency has expressly delegated legal authority to the company, or whether the company is performing a function which the Government "itself would have had to perform." *Id* at 153-154.

In *Watson,* the Court provided a thorough legislative history of the federal officer removal statute. That history makes clear that the statute was never intended to provide this

Court with jurisdiction over a dispute such as this one. Instead, the statute was meant to protect revenue agents, prohibition agents, customs agents, and the like from state interference, especially criminal prosecutions for enforcing federal law. As the Supreme Court set out in *Watson*, "the removal statute's 'basic' purpose is to protect the Federal Government from the interference with its 'operations' that would ensue were a State able, for example, to 'arres[t]' and bring 'to trial in a State cour[t] for an alleged offense against the law of the State,' 'officers and agents' of the Federal Government 'acting ... within the scope of their authority.'" 551 U.S. at 150. Quite possibly, this legislative purpose is the reason that the statute has come up very seldom in the Supreme Court since 1948 (the year the statute was last amended) except in cases of postal workers being charged with a state crime (*Mesa v. California*, 489 U.S. 121 (1989)), a federal border agent charged with a violation of Arizona law (*Arizona v. Maypenny,* 451 U.S. 232 (1981)), a federal prison warden and doctor charged with civil wrongs by a prisoner (*Willingham v. Morgan*, 395 U.S. 402 (1969)), and civil rights demonstrators claiming to be federal agents, but who were not (*City of Greenwood v. Peacock*, 384 U.S. 808 (1966)).

      Both this Court and the Eleventh Circuit have noted the limited purpose of the federal officer removal statute. See *Swanstrom v. Teledyne Cont'l Motors*, Inc., 531 F. Supp. 2d 1325, 1330 (S.D. Ala. 2008) ("The Court of Appeals for the Eleventh Circuit has explained that the "purpose of section 1442(a)(1) is to 'permit[ ] the removal of those actions commenced in state court that expose a federal official to potential civil liability or criminal penalty for an act performed ... under color of office.' " *Magnin v. Teledyne Cont'l Motors,* 91 F.3d 1424, 1427 (11th Cir.1996). In *Swanstrom*, this Court recognized that merely participating in a highly regulated industry does not make a company a federal officer for purposes of removal. *Id.*

In the present case, Humana has done nothing more than cite to regulations which may or may not govern the specific conduct at issue in this litigation. Doc. 1. Humana alleges, without any proof whatsoever, that it performs functions that absent the alleged contract between CMS and Humana, CMS "would have to perform itself." Doc. 1, ¶ 14b. However, this unsupported claim is belied by the Medicare statute itself as the Sixth Circuit explained in *Ohio Chiropractic,* supra. In a detailed analysis of the Medicare statute, the Sixth Circuit correctly noted that the Government is not required to offer Medicare Advantage plans. 647 F. App'x at 622-24. Thus, Humana is not performing a function which the Government itself must perform. Similarly, Humana has offered no proof that CMS has delegated anything to Humana, an allegation it also makes in its Notice of Removal. Doc. 1, ¶ 15. Again, the Sixth Circuit correctly found on a record exactly alike the one presented here, that no evidence of any delegation exists. *Id*. Accordingly, this Court should remand this case.

The Sixth Circuit properly analyzed and distinguished the cases which Humana has cited in its Notice of Removal. As that court stated, each one of those cases did not answer the critical questions regarding delegation and whether the relationship between CMS and Humana is "unusually close." As the court explained, the relationship is not "unusually close" because the two entities deal at arm's length. 647 F. App'x. at 622-24. In this case, Humana is not an organization to which CMS has delegated its authority. It is not a fiscal intermediary. Thus, it has not "acted under" a federal office sufficient to establish federal officer removal jurisdiction. For those reasons, this Court should find that Humana has not met its "special" burden of establishing federal officer jurisdiction as a private company, and this Court should remand this case.

    **B.**    **The Challenged Actions Are Not "Under Color"**

Like the "arising under" analysis in its opinion, the Sixth Circuit in *Ohio Chiropractic* also answered the question whether the challenged actions have a causal nexus to any action allegedly under color of a federal office. In that case, the court held that "a contractor acting under a federal officer could not remove a suit solely on the ground that but for the contract, it would not have interacted with the plaintiff." 647 F. Appx. at 625.

In the present case, Humana's entire "under color" argument is based on its alleged contract with CMS. Humana ignores the fact that Plaintiff's Complaint challenges the sales practices of Humana's agents, and that he alleges that Humana wrongfully caused the death of Mrs. Hepstall. The nexus with that conduct to Mrs. Hepstall is nothing more than an alleged contract, which does not delegate authority, between CMS and Humana. Thus, it is not sufficient to establish the "under color" element of federal officer jurisdiction, and this Court should remand this case.

**C.    Humana Does Not Have a Colorable Defense**

Humana argues that it has a colorable defense of express preemption of Plaintiff's claims. Humana does not argue implied or conflict preemption in its Notice of Removal. This Court has previously disposed of that argument. It held that the statutes which Humana cites do not completely preempt state law claims. *Bolden v. Healthspring of Ala., Inc.*, No. CIV.A. CV07-0413CGB, 2007 WL 4403588, at *10 (S.D. Ala. Oct. 2, 2007). Thus, even assuming that Plaintiff's state law claims somehow fall under the scope of those statutes (a fact which Plaintiff disputes), Plaintiff's claims are not completely preempted, and Humana lacks a colorable preemption defense.

Humana also argues that it has a colorable defense of failure to exhaust administrative remedies. However, Humana has not established that Plaintiff's claims arise under the Medicare Act. It has pled no facts in its Notice of Removal that Plaintiff's claims are somehow

10

intertwined with a claim for Medicare benefits. It fails to mention that Plaintiff has asserted a wrongful death claim, a claim which does not require exhaustion of administrative remedies. *Ardary v. Health Plans of Cal., Inc.,* 98 F.3d 496 (9th Cir. 1996). Thus, Humana has not established that it has a colorable defense of failure to exhaust administrative remedies. Thus, this Court should remand this case to state court.

## CONCLUSION

For the reasons discussed herein, Plaintiff requests that this Court enter an Order remanding this case to the Circuit Court of Clarke County, Alabama.

Respectfully submitted this 7th day of May, 2018,

        GILMORE LAW FIRM
        Attorney for Plaintiff

        By: _____*/s/ R. Edwin Lamberth*_____
        R. EDWIN LAMBERTH (ASB-5698-A56R)
            rel@gilmorelawfirm.com
            Post Office Box 729
            Grove Hill, Alabama 36451
            (251) 275-3115 Telephone
            (251) 275-3847 Facsimile

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have served the following in accordance with the Federal Rules of Civil Procedure on this 7th day of March, 2018:

JOHN M. HUNDSCHEID
Attorney for Defendant Humana Health Plan, Inc.
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
1400 Wells Fargo Tower
420 20th Street North
Birmingham, Alabama 35203-5202
(205) 250-8319 telephone
*Via ECF*

Tommy Thrower
4354 Old Shell Road
Mobile, Alabama 36608
*Via U.S. Mail*

Mike Quigley
4354 Old Shell Road
Mobile, Alabama 36608
*Via U.S. Mail*

                                                              /s/ R. Edwin Lamberth