# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ALABAMA
# MOBILE DIVISION

| | |
|---|---|
| BOBBY R. HEPSTALL, individually and as Administrator ad Litem of the Estate of Lucy Hepstall,<br><br>    Plaintiff,<br><br>vs.<br><br>HUMANA HEALTH PLAN, INC.; TOMMY THROWER; MIKE QUIGLEY and Fictitious Defendants A-C, being those individuals or entities improperly named as Defendants Humana, Thrower, or Quigley, and whose identities are unknown to Plaintiff, but will added by amendment once ascertained,<br><br>    Defendants. | CASE NO.:   1:18-cv-00163-CG-MU |

## HUMANA'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

When sued for actions taken while performing official duties, a contractor who assists in fulfilling a government task is entitled to remove the action to federal court under 42 U.S.C 1442(a)(1). Humana Health Plan, Inc. ("Humana") assists the U.S. Department of Health and Human Services' Centers for Medicare & Medicaid Services ("CMS") in administering Medicare benefits, and in doing so it "acts under" the authority of that agency. Plaintiff has sued Humana for actions taken under its contract with CMS. Because Humana properly invoked the federal officer removal statute, Plaintiff's Motion to remand should be denied.

Plaintiff's Motion misreads the key Supreme Court decision on point with this case based on an unpublished, non-binding opinion of the Sixth Circuit Court of Appeals. Every court outside the Sixth Circuit to consider that opinion's reasoning has found it unpersuasive. This Court should do the same.

1

## BACKGROUND

A.      **Medicare Advantage Organizations**

A patient may receive Medicare benefits in one of two ways. The first option is to enroll in a "traditional" fee-for-service plan under Medicare Part A or Part B. *See* 42 U.S.C. § 1395w-21(a)(1)(A). The second option is to enroll in a Part C plan, also known as "Medicare Advantage." *See* 42 U.S.C. § 1395w-21(a)(1)(B). Each Part C provider, commonly called a "Medicare Advantage Organization" ("MAO"), must contract with CMS. *See* 42 U.S.C. §1395w-21(a)(1)(B). In contrast with a fee-for-service plan, CMS provides each MAO a fixed sum per member. An MAO is required to offer at least the same level of benefits as Part A or Part B plans. *See* 42 U.S.C. § 1395w-22.

Congress developed Part C to "harness the power of private sector competition to stimulate experimentation and innovation that would ultimately create a more efficient and less expensive Medicare system." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 363 (3d Cir. 2012). Part C incentivizes MAOs to provide more efficient and effective healthcare options than "traditional" Medicare. Although the government compensates MAOs differently than Part A or Part B providers, MAOs serve the same function: providing Medicare benefits to patients on behalf of the federal government.

Part C is a critical component of Medicare. Congress expects Part C to "continue to grow and eventually eclipse original fee-for-service Medicare as the predominant form of enrollment under the Medicare program." *In re Avandia Mktg.*, 685 F.3d 353, 363 (3d Cir. 2012), *cert. denied sub nom. GlaxoSmithKline v. Humana Med. Plans, In*c., 133 S. Ct. 1800 (Apr. 15, 2013) (quoting H.R. Rep. No. 105-217). The federal government sees Part C as the future of Medicare

and as a key part of CMS's objective to administer Medicare in a cost effective and patient-centered manner.

**B.      Plaintiff's claims**

The crux of Plaintiff's Complaint is that Humana allegedly wrongfully failed to pay for healthcare services for his late wife, who was a member of a Humana Medicare Advantage plan. Compl. at ¶ 10.  Plaintiff alleges that Humana's alleged conduct constituted breach of contract, bad faith, fraud, and resulted in the wrongful death of his wife.  Compl. at ¶¶ 11-14.  Plaintiff seeks damages for loss of value of his premiums paid in exchange for insurance that was not represented, incurred cost of unpaid health benefits, mental anguish or emotional suffering, and the loss of his wife due to the failure or refusal to pay for necessary medical treatment.  Compl. at ¶ 15.

## ARGUMENT

Humana properly removed this action pursuant to the federal officer removal statute, which permits removal of any action against:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or any agency thereof, sued in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension and punishment of criminals or the collection of revenue.

28 U.S.C. § 1442(a)(1).[1]

A private party seeking to invoke the federal officer statute must meet four elements: "(i) it must be a person; (ii) it must be acting under a federal officer or agency; (iii) it must be sued for actions under color of such office; and (iv) it must have a colorable federal defense."

---

[1] "The right of removal 'is made absolute whenever a suit in a state court is for any act 'under color' of federal office, regardless of whether the suit could originally have been brought in a federal court.'"  *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996) (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)).

*Associates Rehab. Recovery, Inc. v. Humana Med. Plan, Inc*., 76 F. Supp. 3d 1388, 1391 (S.D. Fla. 2014).

Humana satisfies each and every one of these requirements. As a corporation, Humana is a "person" within the meaning of the statute.[2] *See Swanstrom v. Teledyne Continental Motors, Inc*., 531 F. Supp. 2d 1325, 1331 (S.D. Ala. 2008). Humana "acts under" CMS because it assists the Center in administering Medicare benefits under a statutory delegation of authority. Plaintiff's claims concerning which benefits Humana did and did not provide have a causal nexus to the authority granted Humana by CMS because they arise out of Humana's official duties performed on behalf of a federal agency. And finally, Humana has multiple federal law defenses to Plaintiff's state law claims. Accordingly, Humana is entitled to a federal forum to litigate those defenses, and Plaintiff's Motion to Remand should be denied.

**A.     Humana "acts under" CMS's authority to administer Medicare benefits.**

In its capacity as an MAO, Humana "acts under" the authority of CMS. The Supreme Court has instructed lower courts that "[t]he words 'acting under' are broad," and "that the statue must be liberally construed." *Watson v. Phillip Morris Companies*, *Inc*., 551 U.S. 142, 147 (2007) (internal citations omitted). However, Plaintiff urges this Court to adopt an exceedingly narrow view of what constitutes "acting under" federal authority. Plaintiff's limited reading would require finding that a contractor assisting an agency to administer an important government program under a statutory delegation of authority did not necessarily "act under" the authority of that agency. Such a reading is inconsistent with *Watson* and the purpose of the federal office removal statute.

---

[2] Plaintiff's Motion to Remand does not contest that Humana is a "person" within the meaning of 28 U.S.C. § 1442(a)(1).

### 1. Plaintiff's reliance on *Watson* is misplaced. *Watson* supports the conclusion that Humana "acts under" CMS.

Plaintiff's Motion conflates this case with *Watson*, but the two cases are factually distinct, and those factual distinctions have legal significance. *Watson* held that heavy regulation *by itself* was insufficient to permit an entity to remove an action under the federal officer removal statute. But Humana is not *just* heavily regulated; it provides Medicare benefits through a statutory delegation of authority.

In *Watson*, consumers brought a class action against Phillip Morris, alleging that the company violated a state unfair trade practice statute because its cigarettes contained more tar than their marketing as "light" would suggest. *Id.* at 146. Phillip Morris removed the action to federal court under the federal officer removal statue, arguing that the plaintiffs' claims amounted to an attack on the cigarette testing conducted by the company at the direction of the Federal Trade Commission. *Id.* Federal regulations required cigarette manufactures like Phillip Morris to use particular testing procedures. *Id.*

The district court certified the question of whether removal under the federal officer removal statue was proper. *Id.* at 147. The Eight Circuit Court of Appeals held that it was, citing cases permitting heavily regulated federal contractors to remove actions under the statute. *Id.* The Supreme Court reversed, holding that "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." *Id.* at 154. Instead, the removing party must also "assist, or help to carry out, the duties or tasks of the federal superior." *Id*. at 152. However, a contractor who "goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks" *is* entitled to remove under § 1442(a)(1). *Id*. at 153.

Compare Phillip Morris's position in *Watson* with Humana's position in this case. Phillip Morris did not assist the federal government in performing a public function; Humana does.

Phillip Morris was *required* to undertake certain actions pursuant to federal regulations but was not *empowered* to assist the federal government in achieving a statutory objective. In contrast, Humana actively assists CMS in the administration of Medicare, a basic government task. The Medicare statute and its accompanying regulations do not merely regulate how Humana may offer Medicare Part C benefits; it creates the very authority by which Humana can administer Medicare benefits in the first place. The statute not only regulates Humana's conduct but *delegates* Humana authority to assist in Medicare's administration.

Humana's relationship with CMS "goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *Id*. at 153. Medicare's administration is an essential government functional, and Part C plays a critical role in Medicare. As an MAO, Humana "acts under" the authority of CMS to administer Medicare benefits. Humana works with CMS to achieve "shared goals" in "fulfilling [Medicare's] statutory objective." *Davis v. Cent. Alabama Elec. Co-op*., CIV.A. 15-0131-W, 2015 WL 4742496, at *2 (S.D. Ala. Aug. 11, 2015). Therefore, Humana "acts under" CMS.

> 2. ***Ohio State Chiropractic's*** **reasoning is unpersuasive. No court outside the Sixth Circuit has elected to follow it.**

To explain why *Watson* requires this Court to remand this case, Plaintiff relies extensively on *Ohio State Chiropractic,* an unpublished, non-binding opinion from the Sixth Circuit. Because the case is unpublished, it "is not precedentially binding under the doctrine of stare decisis, [and] is considered . . . for its persuasive value only," even for district courts within the Sixth Circuit. *United States v. Sandford*, 476 F.3d 391, 396 (6th Cir. 2007).[3] This Court need not—and should not—defer to *Ohio State Chiropractic*'s flawed reasoning.

---

[3] Plaintiff also claims that Humana has failed to provide evidence that it acts under the authority of CMS or that particular regulations control Humana's actions with regard to the claims of

*Ohio State Chiropractic*'s conclusion that Humana does not "act under" the authority of CMS is unpersuasive. No court outside the Sixth Circuit has elected to follow the opinion's reasoning that an MAO does not "act under" CMS, and district courts asked by plaintiffs seeking remand to apply the case have found it inconsistent with *Watson*. *See Body & Mind Acupuncture v. Humana Health Plan, Inc.*, 1:16CV211, 2017 WL 653270, at *5 (N.D.W. Va. Feb. 16, 2017) ("The conclusion in *Ohio State Chiropractic* appears inconsistent with the broad and liberal construction of 'acting under' articulated by the Supreme Court in *Watson*."); *Inchauspe v. Scan Health Plan*, 217CV06011CASJCX, 2018 WL 566790, at *5 n.1 (C.D. Cal. Jan. 23, 2018) ("The Court declines to follow the Sixth Circuit in light of the Supreme Court's guidance in *Watson* that the term 'acting under' should be given a liberal construction.").[4]

The fundamental flaw in *Ohio State Chiropractic*'s reasoning is that it takes an "inappropriately narrow view" of a MAO's role in the administration of Medicare. *Body & Mind Acupuncture*, 2017 WL 653270, at *5 n.5. The Sixth Circuit reasoned that MAOs did not help CMS fulfill a basic government function because if no MAOs contracted with CMS to provide benefits under Part C, the government would likely elect to offer patients Medicare benefits with traditional fee-for-service plans under Part A or Part B rather than create its own Medicare Advantage plans. *See Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.*, 647 Fed. Appx. 619, 623–24 (6th Cir. 2016).

---

Plaintiff's late wife. However, Humana "does not bear the onerous burden of proving up the merits of the case in order to establish § 1442(a)(1) jurisdiction." *Davis*, CIV.A. 15-0131-W, 2015 WL 4742496, at *3 n.8. Instead, allegations in the Notice of Removal and subsequent briefing regarding the applicable regulations are sufficient. *See* id.

[4] Noteworthy, Courts within the Eleventh Circuit have ruled that insurers can remove claims under the federal officer removal statute where the claims are based on the insurer's contract with CMS to administer Medicare benefits through Medicare Advantage plans. *See Einhorn v. CarePlus Health Plans, Inc.,* 43 F. Supp. 3d 1268, 1269–70 (S.D. Fla. 2014); *Assocs. Rehabilitation Recovery, Inc. v. Humana Med. Plan, Inc.*, 76 F.Supp.3d 1388 (S.D. Fla. 2014).

But that analysis ignores that the government *would* have to offer those patients benefits *somehow* to achieve Medicare's statutory purpose. Part C cannot be divorced from Part A or Part B. MAOs like Humana assist CMS in administering Medicare benefits and achieving the program's objectives. Part A, Part B, and Part C are three components of the same government program designed to fulfill a singular purpose: providing health insurance benefits to patients. While Part C might provide a different procedure by which a private contractor offers Medicare benefits, at its root, it is still the administration of Medicare benefits.

*Ohio State Chiropractic*'s reasoning that the federal government would have to offer its own plans under Part C for an MAO to be performing an essential government function ignores the Medicare statutory scheme and contradicts *Watson*'s instruction to interpret the "acts under" requirement liberally. Instead, "the inquiry should focus on whether CMS would have to administer *any* benefits in the absence of MAOs." *Body & Mind Acupuncture*, 2017 WL 653270, at *5 n.5. Unquestionably, CMS would have to do so, and so MAOs "act under" the authority of CMS because it performs a function that would otherwise be performed by the government itself.

*Ohio State Chiropractic*'s problematic reasoning is illustrated in the analogies it employs. The Sixth Circuit said, without much elaboration, that MAOs were different than entities traditionally found to "act under" federal authority, like a contractor providing healthcare to federal employees. *See Ohio State Chiropractic*, 647 Fed. Appx. at 624 (citing *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1234 (8th Cir. 2012)) ("Contrast Humana's situation with that of contractors performing tasks that the government would otherwise have to use its own agents to complete"). However, the Eight Circuit's reasoning in *Jacks* applies with equal force to an entity like Humana. In *Jacks*, the Eight Circuit held that a private contractor

8

providing health benefits to federal employees was entitled to remove an action under the federal officer removal statute because entities providing benefits to federal employees were "not unrelated and wholly separate business entities merely doing business in a highly regulated arena, but rather conduct business under the delegation of the federal government." *Jacks*, 701 F.3d at 1234. The Eight Circuit explained that "[a]t all times, the carrier is subject to OPM oversight, uniquely operates with the United States Treasury, submits to OPM's regulatory requirements, and ultimately answers to federal officers." *Id*.

The same is true of Humana.[5] Humana's relationship with CMS is "unusually close." *Watson*, 551 U.S. at 153. CMS approved Humana as an MAO and regulates the benefits it must offer. Even more "unusual," the very ability of Humana to offer Medicare Part C stems from federal statute. *See* 42 U.S.C.A. § 1395w-27(a) ("The Secretary shall not permit the election . . . of a Medicare+Choice plan offered by a Medicare+Choice organization under this part, and no payment shall be made . . . to an organization, unless the Secretary has entered into a contract under this section with the organization with respect to the offering of such plan").[6] Accordingly, Humana is not "merely doing business in a highly regulated arena" but rather is operating "under the delegation of the federal government." *Jacks*, 701 F.3d at 1234. Humana is assisting the federal government "to produce an item that it needs"—Medicare benefits for patients. *Watson*, 551 U.S. at 153. *Ohio State Chiropractic*'s reasoning to the contrary is flawed and should not be followed.

---

[5] CMS reviews Medicare advantage benefits offers by MAOs. *See* 42 C.F.R. § 422.100(f). Further, MAOs must also comply with CMS national coverage determinations and general coverage guidelines included in original Medicare manuals and instructions and written coverage decisions for local Medicare contractors. *See* 42 C.F.R. § 422.102(b).

[6] Congress initially called Part C "Medicare + Choice." In 2003, Congress strengthened and renamed the program "Medicare Advantage."

**B.      Plaintiff's claims have a "causal nexus" to Humana's official duties.**

To remove under the federal officer removal statute, a defendant must show it has been sued for actions under the color of its official duties. *Associates Rehab. Recovery*, 76 F. Supp. 3d at 139. This requirement's burden is light. *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) ("The hurdle erected by this requirement is quite low . . ."); *Carter v. Monsanto Co.*, 635 F. Supp. 2d 479, 489 (S.D.W. Va. 2009) ("The causal nexus requirement does not establish a stringent standard"). A defendant need "only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137–38 (2d Cir. 2008).

Plaintiff cites two cases where a district court granted a motion to remand because of the alleged lack of connection between a defendant's status as a Medicare provider and the harm alleged by a plaintiff. *See Kennedy v. Health Options, Inc.,* 329 F. Supp. 2d 1314 (S.D. Fla. 2004); *Sikes v. Careplus Health Plans, Inc.*, 2014 WL 4322322 (S.D. Fla. Sept. 2, 2014), *vacated on other grounds*, 2015 WL 1801272 (11th Cir. April 7, 2015). Both cases apply a causation requirement whose burden cannot be reasonably characterized as "low." Instead, these two cases would require that the defendant show it undertook the *particular* challenged action as a *direct* result of federal regulation. *See Skiles*, 14-80892-CIV, 2014 WL 4322322, at *3 ("[S]imply because CarePlus maintains a contract with a federal agency requiring it to abide by certain regulations does not yield the conclusion that any dispute implicating such contract will fall within the purview of the federal officer removal statute."); *Kennedy*, 329 F. Supp. 2d at 1318 ("Defendant has not demonstrated that its decision to discharge Plaintiff prematurely was performed pursuant to the direct and detailed control of an officer of the United States."). Applying such a standard would undermine the purpose of federal officer removal because it

would effectively require a defendant to demonstrate the validity of its defense before obtaining a federal forum. But Congress enacted the federal officer removal statute to provide defendants acting under federal authority a right to have the merits of their defenses determined by a federal court. *See Jefferson County v. Acker*, 527 U.S. 423, 447 (1999) (Scalia, J., concurring in part and dissenting in part) (noting that "the main point" of the statute "is to give officers a federal forum in which to litigate the merits of immunity defenses").

The causation requirement set forth in *Kennedy* and *Sikes* is materially different from the one articulated by the Supreme Court. *See Willingham*, 395 U.S. at 409 ("In a civil suit of this nature, we think it was sufficient for petitioners to have shown that their relationship to respondent derived solely from their official duties."). Humana's relationship with Plaintiff and his wife was based exclusively on the performance of its official duties as an MAO. Moreover, Plaintiff has alleged that Humana failed to pay benefits that it was contractually obligated to do so. Such a claim is inextricably intertwined with a claim for reimbursement of Medicare benefits, and, therefore, is an action against Humana based on its official duties. Humana has satisfied its light burden of showing that Plaintiff's claims relate to its role in administering a federal program.

C.     **Humana has multiple colorable defenses under federal law.**

The final requirement is that the removing defendant possesses a colorable defense under federal law. *Associates Rehab. Recovery*, 76 F. Supp. 3d at 139. "Colorable" does not mean likely to prevail; the defendant need only show that it has raised the defense in good faith. *See Willingham*, 395 U.S. at 406–07 ("[The federal officer removal statute] is broad enough to cover all cases where federal officers can raise a colorable defense . . . . The officer need not win his case before he can have it removed."); *Davis*, CIV.A. 15-0131-W, 2015 WL 4742496, at *4–5

(noting that "defendant's burden is merely to show that such a federal defense is not without foundation and is made in good faith" and characterizing the burden as a "modest hurdle"). Humana has two colorable defenses under federal law to Plaintiff's claims. First, Plaintiff failed to exhaust his and his late wife's administrative remedies prior to filing this lawsuit. Second, Plaintiff's claims are preempted by federal law. In fact, Humana has already raised these defenses in a Motion to Dismiss Plaintiff's complaint. *See* (ECF Docs. 7, 8).

> **1. Humana has a colorable defense that Plaintiff has failed to exhaust his administrative remedies.**

Plaintiff's only argument against Humana having a colorable defense that he failed to exhaust his administrative remedies before filing suit is that a exhaustion is not a prerequisite to a wrongful death claim. But this argument fails for at least two reasons. First, Plaintiff's Complaint not only contains a wrongful death claim but also claims for breach of contract, bad faith, and fraud. *See* Compl. at ¶¶ 11-14. Even assuming a wrongful death claim did not require exhaustion, Plaintiff still has other claims in his Complaint that he does not contest *do* require exhaustion.

Even the case cited by Plaintiff acknowledges that exhaustion is required for Plaintiff's other claims. In *Ardary v. Aetna Health Plans of California, Inc*, the Ninth Circuit Court of Appeals only considered whether the Medicare Act "preclude[d] the heirs of a deceased Medicare beneficiary from bringing state law claims for wrongful death against a private Medicare provider *when those claims do not seek recovery of Medicare benefits* but instead seek compensatory and punitive damages on the grounds that the provider both improperly denied emergency medical services and misrepresented its managed care plan to the beneficiary." *Ardary v. Aetna Health Plans of California, Inc.*, 98 F.3d 496, 499 (9th Cir. 1996), *as amended on denial of reh'g and reh'g en banc* (Dec. 26, 1996) (emphasis added). But Plaintiff *does* seek

damages for the value of Medicare benefits allegedly not paid. *See* Compl. at ¶ 15 (describing Plaintiff's damage as "the value of his premiums paid in exchange for insurance that was not as represented" and the "costs for healthcare benefits which the Defendants refused to pay"). Unquestionably, these damages relate to claims that arise out of the Medicare Act, and, therefore, require administrative exhaustion.[7] *See Cochran v. U.S. HealthCare Fin. Admin.*, 291 F.3d at 779 ("Until a claimant has exhausted her administrative remedies by going through the agency appeals process, a federal district court has no subject matter jurisdiction over her lawsuit seeking to 'recover on any claim arising out of' the Medicare Act.").

Second, even as to Plaintiff's wrongful death claim, Plaintiff has only cited to a Ninth Circuit case to support the notion that exhaustion is not required. *Ardary* is not binding on this Court and, therefore, cannot establish that Humana's defense lacks any legal foundation. *See Davis*, CIV.A. 15-0131-W, 2015 WL 4742496, at *4–5. Humana has met its burden of showing it has a colorable defense that Plaintiff and his late wife failed to exhaust the necessary administrative remedies prior to bringing this suit.

### 2. Humana has a colorable defense that Plaintiff's state law claims are preempted by federal law.

The Medicare Act contains an express preemption provision displacing state law: "The standards established under this part [42 U.S.C. §1395w-21 et. seq.] shall supersede any State law or regulation (other than state licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations

---

[7] This point is further expounded in Humana's Memorandum in Support of its Motion to Dismiss. *See* (ECF Doc. 8 at 6–11). But, put simply, a plaintiff raising a claim arising under the Medicare Act must exhaust the administrative review process prior to filing suit. *See* 42 U.S.C. § 1395w-22(g); *see also Giesse v. Sec'y. of HHS*, 522 F.3d 697 (6th Cir. 2008) (finding that 42 U.S.C. § 405(h) prohibited judicial review absent exhaustion of administrative remedies).

under this part." 42 U.S.C. §1395w-26(b)(3); *see also* 42 C.F.R. 422.402.  The preemption provision is "very broad."  *See Potts v. Rawlings, Co., LLC*, 897 F. Supp. 2d 185,195 (S.D.N.Y. 2012).

Plaintiff makes a single argument that Humana does not have a colorable preemption defense, claiming that this Court has already determined that the Medicare Act does not preempt his state law claims.  But *Bolden v. Healthspring of Ala., Inc*. is inapposite.  *Bolden* did not establish that the Medicare Act did not preempt certain state law claims.  Instead, *Bolden* held that the Medicare Act did not evidence Congress' intent to "not only to preempt state law within the parameters of the federal statutory scheme, but also to turn state law claims in that area into federal claims or to establish that federal courts had original and removal jurisdiction over such state law claims."  *Bolden v. Healthspring of Ala., Inc*., CIV.A. CV07-0413CGB, 2007 WL 4403588, at *10 (S.D. Ala. Oct. 2, 2007).  The question before the Court in *Bolden* was not whether the Medicare Act preempted certain state law claims but whether it do so in such a manner as to create a federal question as to any suit touching the preempted field.

Here, Humana is not claiming that the Medicare Act's preemption provision gives this Court subject matter jurisdiction over this action.  Plaintiff's argument appears to be that Humana only has a colorable preemption defense if the Medicare Act completely preempts state law, thereby turning state law claims into federal claims.  However, as explained in Humana's Memorandum in Support of its Motion to Dismiss, Plaintiff's state law claims conflict with applicable federal law.[8]  Accordingly, *Bolden*, which discussed when a preemption defense was sufficient to create a federal question under 28 U.S.C. § 1331, is inapplicable.  Because Plaintiff

---

[8] Humana explains how Plaintiff's state law claims specifically conflict with federal law in its Memorandum in Support of its Motion to Dismiss.  *See* (ECF Doc. 8 at 11–13).

has not shown that Humana has advanced this defense in bad faith or without a legal foundation, Humana has a colorable defense that Plaintiff's claims are preempted by federal law.

## CONCLUSION

Because Humana acts under CMS by administering Medicare benefits, and Plaintiff's claims concern actions taken by Humana under that relationship with a federal agency, Humana has a statutory right to have the merits of its federal law defenses heard in this Court. Plaintiff's Motion to Remand should be denied.

Respectfully submitted the 22nd day of May, 2018.

/s/ John M. Hundscheid
JOHN M. HUNDSCHEID
Attorney for Defendant Humana Health
Plan, Inc.

**OF COUNSEL:**
BAKER, DONELSON, BEARMAN,
   CALDWELL & BERKOWITZ, PC
1400 Wells Fargo Tower
420 20th Street North
Birmingham, Alabama  35203-5202
(205) 250-8319  telephone
(205) 488-3719  facsimile
jhundscheid@bakerdonelson.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 22nd day of May, 2018, a copy of the above and foregoing "Opposition to Plaintiff's Motion to Remand" has this date been served upon the following parties of record via electronic means and/or mailed via United States Mail, postage prepaid and properly addressed as follows:

R. Edwin Lamberth
Gilmore Law Firm
P.O. Box 729
Grove Hill, AL  36451
rel@gilmorelawfirm.com
*Attorney for Plaintiff*

Tommy Thrower
4358B Old Shell Rd
Suite #274
Mobile, AL 36608

Mike Quigley
121 Woodruff Ct.
Mobile, AL 36608

        /s/ John M. Hundscheid_____
        OF COUNSEL