IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BOBBY R. HEPSTALL, etc., | ) |
| Plaintiff, | ) ) ) |
| v. | )  CIVIL ACTION NO. 18-0163-CG-MU |
| HUMANA HEALTH PLAN, INC., *et al.*, | ) ) ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion to Remand (Doc. 19) and Defendant Humana Health Plan, Inc.'s ("Humana") Opposition to Plaintiff's Motion to Remand (Doc. 22). Plaintiff's motion has been referred to the undersigned Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen LR 72(a)(2)(S). Upon consideration of all relevant filings in this case and the applicable law, the undersigned recommends that Plaintiff's motion to remand be **DENIED**.

## BACKGROUND

On March 2, 2018, Plaintiff filed his original complaint in the Circuit Court of Clarke County, Alabama. In his complaint, Plaintiff avers that he purchased a Humana health insurance policy that was in place when his wife, a covered insured, became ill in February of 2016. (Doc. 1-1 at p. 4). Plaintiff alleges that Humana failed or refused to pay for numerous healthcare services for his wife throughout March, April, and May, 2016 in breach of his insurance contract with Humana. (*Id.* at p. 5). In addition to claims for breach of contract, bad faith failure

to pay or investigate a claim for health insurance benefits, and fraudulent misrepresentation, Plaintiff alleges that Humana's refusal to authorize and pay for his wife's treatment constituted negligence or wantonness that resulted in her wrongful death. (*Id.*). Plaintiff seeks recovery for damages he suffered, specifically, the lost value of his premiums paid in exchange for insurance that was not as represented and the costs he incurred for healthcare benefits that Humana refused to pay, as well as damages for mental anguish, emotional suffering and the loss of his wife. (*Id.*).

 Pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, Defendant Humana filed a Notice of Removal of this action to this Court on April 5, 2018, in which it alleged that this Court has federal officer jurisdiction because Humana acts under the direction of the U.S. Department of Health and Human Services' Centers for Medicare & Medicaid Services ("CMS") and has been sued in this case for actions taken in such capacity pursuant to its contract with CMS. (Doc. 1 at p. 1). On May 7, 2018, Plaintiff filed a motion to remand this action back to state court on the grounds that Humana has not provided the Court with evidence to support its contention that it is entitled to federal officer jurisdiction and that Humana is not, in fact, a "federal officer" for purposes of the removal statute. (Doc. 19 at pp. 1-2). Humana filed a response in opposition to Plaintiff's motion to remand on May 22, 2018. (Doc. 22).

## CONCLUSIONS OF LAW

 Federal courts are courts of limited jurisdiction and must "proceed with caution in construing constitutional and statutory provisions dealing with [their]

jurisdiction." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212 (1971), *quoted in Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly," and "*all doubts about jurisdiction should be resolved in favor of remand to state court*." *Univ. of S. Ala.*, 168 F.3d at 411 (emphasis added); *see also Burns v. Windsor Insurance Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994) (holding that any questions or doubts are to be resolved in favor of returning the case to state court). Humana claims in this case that federal jurisdiction is proper pursuant to 28 U.S.C. § 1442(a)(1). (Doc. 1).

Section 1442(a)(1) provides:

> A civil action … that is commenced in a state court and that is against or directed to any of the following may be removed by them…:
>
> > (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office ….

In *Magnin v. Teledyne Continental Motors*, the Eleventh Circuit explained that the "purpose of section 1442(a)(1) is to 'permit[] the removal of those actions commenced in state court that expose a federal official to potential civil liability or criminal penalty for an act performed … under color of office.'" 91 F.3d 1424, 1427 (11th Cir. 1996) (quoting *Murray v. Murray*, 621 F.2d 103, 107 (5th Cir. 1980)). The "federal officer provision is 'not "narrow" or "limited"' but instead is 'broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law.'" *McMahon v. Presidential Airways, Inc.*, 410 F. Supp. 2d 1189, 1196 (M.D. Fla. 2006). "Notwithstanding its

3

broad application, because the federal officer removal statute is predicated on the protection of federal activity and an anachronistic mistrust of state courts' ability to protect and enforce federal interests and immunities from suit, private actors seeking to benefit from its provisions bear a special burden in establishing the official nature of their activities." *Williams v. Gen. Elec. Co.,* 418 F. Supp. 2d 610, 614 (M.D. Pa. 2005) (internal quotations omitted), *quoted with approval in Swanstrom v. Teledyne Cont'l Motors, Inc.*, 531 F. Supp. 2d 1325, 1330 (S.D. Ala. 2008).

Section 1442(a) "provides for removal only when '(1) a defendant has acted under the direction of a federal officer, (2) there was a causal connection between its action and the official authority, (3) the defendant has a colorable federal defense to the plaintiff's claims, and (4) the defendant is a "person" within the meaning of the statute.'" *Swanstrom*, 531 F. Supp. 2d at 1331 (quoting *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 967 n.2 (8th Cir. 2007)). Plaintiff does not contest the fourth ground as it is well-settled that Humana is a "person" within the meaning of § 1442(a)(1). (Doc. 19 at p. 2). Plaintiff argues that removal of this action was not proper, however, because Humana was not "acting under" the direction of a federal officer, there is no causal connection between its charged conduct and the official authority, and Humana does not have a colorable federal defense to his claims. (*Id.*). Humana disagrees with Plaintiff's arguments.

A. **"Acting Under" and Causal Connection Requirements**

The Medicare Act ("the Act"), 42 U.S.C. § 1395, *et seq.,* which was

enacted in 1965, established a federally subsidized health insurance program primarily benefitting the elderly and disabled persons. *See* 42 U.S.C. § 1395, *et seq.*; *see also Heckler v. Ringer*, 466 U.S. 602, 605 (1984). When it was enacted, Medicare consisted of only two parts, Parts A and B. Pursuant to these parts of the Act, the federal government pays health care providers directly for services rendered to Medicare beneficiaries. 42 U.S.C. §§ 1395c-1395i-5, 1395j-1395w-6. Part C of the Act was enacted in 1997 (and amended in 2003) to provide an alternative program whereby Medicare beneficiaries can receive Medicare benefits through a variety of private plans rather than through Parts A or B. 42 U.S.C. § 1395w-21(a)(1)(A); 42 U.S.C. § 1395w-22, *et seq.* The stated purpose of Part C was to "allow beneficiaries to have access to a wide array of private health plan choices in addition to traditional fee-for-service Medicare … [and to] enable the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options." H. Conf. Rep. No. 105-217, at 585 (1997), *quoted in Bolden v. Healthspring of Ala., Inc.,* Civ. A. Nos. CV07-0413-CG-B, CV07-0414-CG-M, 2007 WL 4403588, at *8 (S.D. Ala. Oct. 2, 2007). The goal was to "ultimately create a more efficient and less expensive Medicare system." *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 685 F.3d 353, 363 (3d Cir. 2012).

The Centers for Medicare and Medicaid Services ("CMS"), an agency within the Department of Health and Human Services, was assigned the responsibility for administering Medicare. To administer plans under Part C, private companies, Medicare Advantage Organizations ("MAOs"), contract with

5

CMS. 42 U.S.C. § 1395w-27. Pursuant to § 1395w-27, [s]uch contract shall provide that the organization agrees to comply with the applicable requirements and standards of this part and the terms and conditions of payment as provided for in this part." "MAOs are subject to extensive regulation, 42 C.F.R. §§ 422.1-422.2615, but their contract with CMS gives them autonomy to take advantage of the private market by designing plans, choosing providers, and setting costs." *Body & Mind Acupuncture v. Humana Health Plan, Inc.*, Civ. A. No. 1:16CV211, 2017 WL 653270, at *2 (N.D. W. Va. Feb. 16, 2017). CMS makes monthly per-beneficiary payments to the MAOs based on their contracts; thence, the MAOs take on the prospective financial risk of serving Medicare beneficiaries. 42 U.S.C. §§ 1395w-23, 1395w-25(b). Medicare coverage determinations by MAOs are made pursuant to criteria established by CMS. For example, Medicare generally precludes coverage for services that "are not reasonable and necessary for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A).

   Section 1442(a) permits removal only if the defendant was "acting under" an agency or officer of the United States when carrying out the "acts" that are the subject of the plaintiff's complaint. *Watson v. Phillip Morris Cos., Inc.,* 551 U.S. 142, 147 (2007). "The words 'acting under' are broad, and [the Supreme] Court has made clear that the statute must be "liberally construed." *Id*. (citing *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). In *Watson,* the Supreme Court explained that the basic purpose of the federal officer removal statute is to protect the federal government and its officers from interference with its operations by a state and its local laws or by a state's attempt to deprive federal officials of a

forum in which to assert federal immunity defenses. *Id.* at 150. "Where a private person acts as an assistant to a federal official in helping that official to enforce federal law, some of these same considerations may apply." *Id*. at 151. For the federal officer removal statute to apply to a private person, the "acting under" element "must involve an effort to *assist*, or to help *carry out,* the duties or tasks of the federal superior." *Id.* at 152, *quoted in Caver v. Cent. Ala. Elec. Co-op.*, Civ. A. No. 15-0129-WS-C, 2015 WL 4742490, at *1 (S.D. Ala. Aug. 11, 2015). In analyzing whether a private company is acting under a federal office or official, courts must also consider the extent to which it acted under federal direction at the time it was engaged in the conduct being sued upon and whether the private company was providing a service the federal government would itself otherwise have to provide. *Caver*, 2015 WL 4742490, at *1 (citations omitted). "[A] removing defendant must show something more than its status as a regulated firm or its obligation to comply with federal law." *Id*. (citing *Watson*, 551 U.S. at 153 ("a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone," and "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official'")).

     "To satisfy § 1442(a)(1), [the removing party] must also show a causal nexus between the acts that form the basis of the lawsuit and the defendant's acts performed pursuant to the federal officer's direct orders or to comprehensive regulations." *Id.* at * 3. "'The causal nexus requirement does not establish a stringent standard … The defendants in this case need only show that the federal

7

direction created the circumstances underlying the liability.'" *Id*. (quoting *Carter v. Monsanto Co.,* 635 F. Supp. 2d 479, 489 (S.D. W. Va. 2009)).

The Eleventh Circuit has not spoken to the exact issue presented here-- that is, whether an MAO who has contracted with CMS can claim federal officer jurisdiction in a case involving its allegedly wrongful failure or refusal to pay benefits to a Medicare beneficiary. Several federal district courts in Florida have addressed the issue. In *Baptist Hospital of Miami, Inc. v. Humana Health Insurance Company of Florida, Inc.*, Case No.: 1:15-cv-22009-UU, 2015 WL 11237013 (S.D. Fla. Aug. 19, 2015), the court noted that other courts in that district "have found that insurers can remove claims under the federal officer removal statute where the claims are based on the insurer's contract with CMS to administer Medicare benefits through Medicare Advantage Plans." 2015 WL 11237013, at *5 (citing *Einhorn v. CarePlus Health Plans, Inc.,* 43 F. Supp. 3d 1268, 1270-71 (S.D. Fla. Aug. 18, 2014) (finding federal officer removal jurisdiction where insurer, who had contracted with CMS, had acted as an MAO in seeking reimbursement for benefits paid on behalf of beneficiary); *Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan, Inc.*, No. 14-cv-21677, 2014 WL 7404547, at *2 (S.D. Fla. Dec. 10, 2014) (finding federal officer removal jurisdiction where the plaintiff's claim concerned the insurer's "denial of payments, payments which it denied pursuant to its authority and obligations under federal law")). The *Baptist Hospital* court concluded that "[d]etermining whether the claim is based on a health insurer's actions under its contract with CMS requires determining whether the insurer made coverage determinations

8

under Medicare Advantage plans, or made payments to patients or providers in accordance with the schedules of benefits conferred by the Medicare plans." *Id.*

Plaintiff here has relied upon another Florida district court decision in support of his position that federal officer jurisdiction is not proper in this case. In *Skiles v. CarePlus Health Plans, Inc.*, No. 14-80892-CIV, 2014 WL 4322322, at *3 (S.D. Fla. Sept. 2, 2014), the court held that "the mere presence of a federal regulatory scheme is insufficient to confer jurisdiction pursuant to 28 U.S.C. § 1442(a)(1); simply because CarePlus maintains a contract with a federal agency requiring it to abide by certain regulations does not yield the conclusion that any dispute implicating such contract will fall within the purview of the federal officer removal statute." The *Skiles* court adopted the reasoning of a 2004 case involving a different health care regulatory scheme that held that "[w]ithout a direct causal connection to the decision generating plaintiff's claim, the mere contractual arrangement between the defendant and the Health Care Financing Administration does not 'constitute the direct and detailed control that is required to assert federal jurisdiction.'" *Id.* (quoting *Kennedy v. Health Options, Inc.*, 329 F. Supp. 2d 1314, 1318 (S.D. Fla. 2004)). The Court notes that this decision, which was issued shortly after the *Einhorn* decision, but before the decisions in *Associates Rehabilitation Recovery* and *Baptist Hospital,* has been vacated by the Eleventh Circuit because CarePlus was dismissed from the case during the pendency of the appeal of the motion to remand. *Skiles v. CarePlus Health Plans, Inc.,* No. 14-14087-BB, 2015 WL 1801272 (11th Cir. Apr. 7, 2015).

The only federal circuit court to have addressed this issue is the Sixth

9

Circuit in an unpublished opinion, *Ohio State Chiropractic Association v. Humana Health Plan Inc.*, 647 F. App'x 619 (6th Cir. 2016), upon which Plaintiff heavily relies.[1] This case involved a class action suit filed by non-contract providers against an MAO (Humana) claiming conversion, unjust enrichment, and breach of implied contract based on the MAO's attempt to recoup allegedly overpaid fees due to a technical error in the MAO's claims processing system. The sole issue before the Court was "whether Humana could avail itself of § 1442(a) to remove the suit." *Id*. at 621. Based upon its narrow interpretation of *Watson*, and acknowledging that several lower courts, including those in its own Circuit, had reached the opposite conclusion, the Sixth Circuit held that "the relationship between CMS and MAOs is not so unusually close that Humana may wield the officer-removal statute." *Id*. at 621-23. Concluding that the MAO relationship to the federal government is neither akin to a delegation or unusually close, it found that "the regulation, supervision, and control to which Humana is subject [does not] connote the sort of unusually close relationship necessary for a private contractor to "act under" a federal agency." *Id*. at 624.

While several district courts in the Sixth Circuit have followed the holding in *Ohio State Chiropractic*, district courts in at least two other circuits have criticized and declined to follow that holding. In *Inchauspe v. SCAN Health Plan*, Case No. 2:17-cv-06011-CAS(JCx), 2018 WL 566790 (C.D. Cal. Jan. 23, 2018),

---

[1] Because the case is unpublished, it "is not precedentially binding under the doctrine of *stare decisis*, [and] is considered … for its persuasive value only," even for district courts within the Sixth Circuit. *U.S. v. Sandford*, 476 F.3d 391, 396 (6th Cir. 2007).

the plaintiff filed a complaint in state court against an MAO alleging claims for, *inter alia*, breach of contract, negligence, and the intentional infliction of emotional distress arising from injuries he suffered when the MAO allegedly improperly denied acute rehabilitation services and provided substandard care after he had a stroke. *Id.* at *1. The MAO removed the case to federal court pursuant to the federal officer removal statute. *Id.* In addressing the issue of subject matter jurisdiction, the court first stated that "[t]he Supreme Court has noted that 'acting under' is a broad phrase that must be 'liberally construed.'" *Id.* at * 5 (quoting *Watson*, 551 U.S. at 147). The *Inchauspe* court held that it agreed "with the majority of district courts which have held that MAOs administering Part C benefits fall within the category of highly regulated private contractors described in *Watson* and thus are 'acting under' CMS in a manner that entitles them to removal under § 1442(a)(1)." *Id*. (citing *Body & Mind Acupuncture v. Humana Health Plan, Inc.*, No. 1:16CV211, 2017 WL 653270, at *5 (N.D. W. Va. Feb. 16, 2017) (collecting cases)).

      The court further found that MAOs help CMS "fulfill [a] basic governmental task" by administering Medicare benefits through the private market because, otherwise, CMS would be obligated to administer benefits through Parts A and B to those beneficiaries who currently elect Part C. *Id.* In further support of its conclusion, the court noted that the MAO's "benefits determinations and quality of care are subject to detailed regulations and administrative review by CMS, indicating that their relationship is 'an unusually close one involving detailed regulation, monitoring, and supervision.'" *Id*. (quoting *Watson,* 551 U.S. at 153).

11

Notably, the court specifically declined to follow the Sixth Circuit's decision in *Ohio State Chiropractic* "in light of the Supreme Court's guidance in *Watson* that the term 'acting under' should be given a liberal construction." *Id.* at *5, n.1 (citing *Watson,* 551 U.S. at 147). As to the causal nexus requirement, the court found that, in light of the foregoing determination, the MAO was "acting under" CMS and its regulations when it engaged in the actions that were the subject of the plaintiff's complaint. *Id.* at *5.

This issue was also carefully evaluated by the United States District Court for the Northern District of West Virginia in *Body & Mind Acupuncture v. Humana Health Plan, Inc.*, Civ. A. No. 1:16CV211, 2017 WL 653270 (N.D. W. Va. Feb. 16, 2017). That case involved claims for conversion, breach of implied contract, and unjust enrichment arising from Humana's attempt, as an MAO, to recoup fees paid to a provider who had allegedly used incorrect codes in its billing. *Id.* at *1. Humana removed the case pursuant to the federal officer removal statute, and the plaintiff moved to remand on the grounds that Humana was not "acting under" a federal officer and that there was not a "causal nexus" between its official action and the injury alleged. *Id.* at *4. First, the court noted that, although set forth as two separate requirements, "they tend to merge into a single inquiry; that is, whether 'the acts that form the basis for the state …suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations.'" *Id.* After examining the *Watson* case and district court cases that had addressed the issue, the *Body & Mind Acupuncture* court found that "[t]he conclusion in *Ohio State Chiropractic* appears inconsistent with the broad and

12

liberal construction of 'acting under' articulated by the Supreme Court in *Watson*." *Id.* at \*5. Notably, the court found that "CMS['s review of] Humana's determinations concerning entitlement to benefits evinces an 'unusually close' relationship between the two." *Id.* After conducting its analysis, the court concluded that Humana satisfied the "acting under" element. *Id.*

Having closely examined the cases which have determined this issue, this Court agrees with the *Inchauspe* and *Body & Mind Acupuncture* courts that the decision in *Ohio State Chiropractic* appears contrary to the broad and liberal construction of 'acting under' articulated by the Supreme Court in *Watson*. The Court further finds, like those courts and for the reasons articulated in those decisions, that MAOs, like Humana, are acting under the CMS when providing Medicare benefits to beneficiaries of the Act.

Moreover, like the *Inchauspe* court, this Court finds that Humana has also met the causal nexus requirement. To meet this element of the federal officer removal statute, the removing party must show that "there was a causal connection between its action and the official authority…." *Swanstrom*, 531 F. Supp. 2d at 1331. The claims in this case are quite similar to those made in *Inchauspe*. Plaintiff's claims are, in part, based upon Humana's alleged refusal to pay for benefits that it was contractually obligated to provide. Because his claims are intertwined with Humana's obligations pursuant to regulations that govern its role in administering Part C Medicare claims, the Court finds that the causal nexus requirement has been met. In addition, as to Plaintiff's claims for fraud in connection with the sales practices of Humana's agents, it is permissible for the

13

court to exercise jurisdiction over these related claims, as well.

## B. Colorable Defenses Under Federal Law Requirement

Removal under 1442(a)(1) also requires that the removing party have a colorable federal defense. Humana has raised two colorable defenses under federal law: failure to exhaust administrative remedies and federal preemption. As noted by the court in *Caver*, this juncture of the proceedings is not the appropriate time to determine the validity of Humana's defenses under the facts of this case. *Id.* "From the outset, it bears emphasis that [the removing defendant] need not *prove* its preemption defense in order for removal to be proper under § 1442(a)(1); rather, defendant's burden is merely to show that such a federal defense is not without foundation and is made in good faith." *Caver*, 2015 WL 4742490, at *4. Clearly these defenses are not without foundation in this type of case, and they appear to have been made in good faith. *See, e.g., Inchauspe*, 2018 WL 566790 at *4 (finding that the removing defendant "raises two 'colorable' federal defenses based on the Medicare Act; failure to exhaust administrative review procedures and preemption"); *Body & Mind Acupuncture*, 2017 WL 653270, at *3 (noting that "Humana asserted two federal defenses: 1) exhaustion of administrative remedies and 2) preemption under the Act" and finding that "Humana has identified a sufficiently colorable federal defense"). Like these two courts, this Court finds that Humana has raised a colorable federal defense in this case.

## CONCLUSION

For the reasons stated above, the Court finds that Humana has met the

14

required elements for removal pursuant to § 1442(a)(1). It is therefore **RECOMMENDED** that Plaintiff's motion to remand (Doc. 19) be **DENIED.**

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **3rd** day of **July, 2018**.

s/P. BRADLEY MURRAY<br>UNITED STATES MAGISTRATE JUDGE